Merle Joy Turchik, SBA #011130
**TURCHIK LAW FIRM, P.C.**
2205 E. Speedway Blvd.
Tucson, AZ 85719
Telephone: (520) 882-7070
Facsimile: (520) 203-0175
merle@turchiklawfirm.com

Attorneys for: Plaintiff Antoinette Smith

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Antoinette Smith, a single woman.<br><br>　　　　　Plaintiff,<br>vs.<br><br>Safeway Stores 98 Inc., dba Safeway, a foreign for-profit corporation.<br><br>　　　　　Defendant. | CASE NO.:<br><br>**COMPLAINT**<br>**(Age Discrimination; Sex Discrimination; Retaliation)**<br><br>**(Jury Trial Requested)** |

For her Complaint against Defendant Safeway Stores 98, Inc., (Safeway), Plaintiff Antoinette Smith alleges as follows:

### NATURE OF THE CASE

1. In this action, Plaintiff seeks damages arising from her being coerced into taking a demotion, being unjustly disciplined, suspended, and then terminated from her employment with Defendant because of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.*, (ADEA), because of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, (Title VII) and in retaliation for having complaining of discrimination and opposing conduct believed to be unlawful, in violation of both statutes.

## JURISDICTION AND VENUE

2. This Court has federal question subject matter jurisdiction under the provisions of 28 U.S.C. § 1331; 42 U.S.C. § 2000e-5(f)(3); and 29 U.S.C. § 626.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in Pima County, Arizona.

## THE PARTIES

4. Plaintiff Antoinette Smith is a resident of Pima County, Arizona, and was an employee of Defendant Safeway within the meaning of 42 U.S.C. § 2000e(f) and 29 U.S.C. § 630(f).

5. Defendant Safeway is a retail supermarket chain with numerous locations in Pima County, Arizona, and is an employer within the meaning of 42 U.S.C. § 2000e(b) and 29 U.S.C. § 630(b).

## ADMINISTRATIVE EXHAUSTION

6. Prior to filing this action, Ms. Smith timely filed a written charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) on December 15, 2017, alleging age discrimination, sex discrimination, and retaliation. (Attached as Exhibit A).

7. The EEOC issued Ms. Smith a Right to Sue Letter on July 11, 2018. (Attached as Exhibit B).

8. Ms. Smith timely filed the current action within 90 days of her receipt of the Right to Sue Letter.

## FACTUAL ALLEGATIONS

9. Safeway employed Ms. Smith for more than 37 years before discharging her.

10. Safeway initially hired Ms. Smith in July of 1980 to work as a Courtesy Clerk and then a Food Clerk in Safeway store #135 in Denver, Colorado.

11. Ms. Smith worked in the Denver Safeway location for ten years.

12. On September 10, 1990, Safeway Store #2060 located at Prince and Campbell in Tucson, Arizona hired Ms. Smith to work as a Food Clerk. She remained at Store #2060 for the next eighteen years working as a Food Clerk as well as in the Floral, Front End, and General Merchandise departments.

13. In 2008, Safeway transferred Ms. Smith to Safeway Store #1983 located at Grant and Silverbell in Tucson, Arizona, to assist the Floral Department.

14. Ms. Smith remained employed at Safeway Store #1983 for the next nine years.

15. In May 2017, Safeway promoted Ms. Smith to the position of General Merchandise Manager at Safeway Store #1983, although her pay remained the same as when she was a Food Clerk.

16. In or about mid-July 2017, Mark Williams became the Store Manager of Safeway Store #1983 and Ms. Smith's immediate supervisor.

17. Over the next three months, Mr. Williams harassed Ms. Smith, coerced her demotion, gave her two written warnings, suspended her, and then terminated her employment.

18. Prior to Mr. Williams becoming Ms. Smith's supervisor, she had not received any disciplinary action for her conduct.

19. Shortly after his arrival, Mr. Williams began treating Ms. Smith differently from other department managers and holding her to more onerous standards. For example, Mr. Williams was always asking Ms. Smith if her department was "faced," would not allow her to have employee assistance provided to other department managers and was constantly calling her into his office.

20. On or about August 14, 2017, Mr. Williams called Ms. Smith into his office and told her that she needed to realize that she "was not as young as [she] used to be" and that he expected to find her "laid out on the backroom floor" one day.

21. Mr. Williams then stated that he needed a "strong young male in the General Merchandise department."

22. Ms. Smith said, "that's against the law," to which Mr. Williams responded, "I don't care. I'm going to do what I have to do."

23. Mr. Williams then threatened Ms. Smith by saying that she either had to "give up [her] department or keep it but [she'd] end up paying for it." When Ms. Smith asked him what he meant by that, Mr. Williams said he would "make up" Corrective Action Reports about her and reminded her that he had just fired an employee with cancer at another store. Ms. Smith left the meeting saying she would think about his request.

24. Approximately one week later, on or about August 21, 2017, Ms. Smith wrote Mr. Williams a letter that she had thought about his proposal to step down but was not going to give up being Manager of the General Merchandise department.

25. A few days later, on or about August 24, 2017, Mr. Williams denied Ms. Smith's request to use three and a half weeks of vacation leave, despite her request having been previously approved by Mr. Williams' predecessor.

26. Mr. Williams told Ms. Smith that she could either forfeit her three and a half weeks of vacation leave or step down as Manager of the General Merchandise department.

27. Ms. Smith reluctantly agreed to step down as General Merchandise Manager so she could take her vacation leave.

28. Prior to Ms. Smith agreeing to step down as General Merchandise Manager, Mr. Williams had already told a 21-year old male employee to apply for the General Merchandise Manager position.

29. Mr. Williams did promote the 21-year old male employee to the General Merchandise Manager position in August 2017.

30. Mr. Williams allowed the new 21-year old male General Merchandise Manager to have up to eight employees assisting him where Ms. Smith was not allowed to have any assistance.

31. When Ms. Smith returned to work on or about September 18, 2017, she was assigned to work as a Cashier/Food Clerk, but Mr. Williams manipulated the schedule to force Ms. Smith to work undesirable hours at the check stand.

1  32. On or about September 20, 2017, Mr. Williams called Ms. Smith into his office. He told her that he had heard she was not happy working the front end.

33. Ms. Smith replied that the work was fine, but she was unhappy with the way Mr. Williams had gone about getting her to work the front end. She repeated back to him what he had said to her in mid-August about wanting a strong young male in the General Merchandise department, and that he would make up Corrective Actions to fire Ms. Smith if she didn't agree to step down as General Merchandise Manager.

34. Ms. Smith was aware that Mr. Williams' wife had recently left him and that he was caring for their five daughters, because Mr. Williams had told Ms. Smith and said that he was having a hard time. Ms. Smith told Mr. Williams that she was sorry that he was having a hard time and that her heart goes out to his five girls. Ms. Smith also said not to be surprised if someday someone like Mr. Williams speaks to one of his daughters the way Mr. Williams intimidated, demeaned, and belittled Ms. Smith because what goes around comes around.

35. Three weeks later, on October 9, 2017, Mr. Williams called Ms. Smith into his office and gave her two written warnings, containing false accusations, for alleged behavior occurring during the discussion on September 20th and for allegedly swearing on October 2nd. Also in attendance was Safeway Asset Protection Manager, David Shemwell.

36. During the meeting on October 9, 2017, Ms. Smith reported to Mr. Shemwell what Mr. Williams had said about replacing her with a strong young male, how he had demeaned and belittled her, and forced her to step down as General Merchandise Manager. She reported to Mr. Shemwell that she let Mr. Williams know that his actions were discriminatory. She also reported to Mr. Shemwell that it was inappropriate for Mr. Williams to swear at young female employees and to make sexually suggestive comments to them.

37. A young female bakery worker had earlier confided in Ms. Smith that Mr. Williams had approached the bakery area to ask her to improve the display. The young

5

1  female employee said she could cut some cake slices and cupcakes and put whipped
2  cream on them.  Mr. Williams then asked the young worker, "so you know how to get
3  nasty with it? [referring to the whipped cream]. The young worker also shared her
4  discomfort in Mr. Williams coming to her area to help her package.

5        38.     Yet another female employee had told Ms. Smith that when she went into
6  Mr. Williams office earlier that week to report on a work situation and that he had "F-
7  bombed" her at least 10 times while she was in his office.

8        39.     In the same time frame, Ms. Smith also witnessed another female employee
9  who had been called into Mr. Williams' office emerge crying on three separate occasions.

10      40.     On October 11, 2017, Safeway suspended Ms. Smith for calling a co-
11  worker. Ms. Smith had called the co-worker to cancel a previously arranged trip to go to
12  Costco and to lunch.  The co-worker answered her cell phone while at work. Ms. Smith
13  did not know that the employee was working.

14      41.     Ms. Smith thought that she had been told by Mr. Shemwell not to speak
15  with Safeway employees while they were working.

16      42.     Although Mr. Shemwell told Ms. Smith that she was being suspended as of
17  October 11, 2017 and would be called at the conclusion of an internal investigation, that
18  was the last communication Ms. Smith had from Safeway.

19      43.     On or about November 9, 2017, a co-worker called Ms. Smith to tell her that
20  a check "for a lot of money" was sitting on the counter in the customer service office.  On
21  the same day, Ms. Smith picked up the check which turned out to be the payout of her
22  vacation leave and deposited it.

23      44.     Thereafter, Ms. Smith surmised that Safeway had terminated her
24  employment.

25  **CAUSES OF ACTION**
26  **COUNT I – AGE DISCRIMINATION AND HARASSMENT IN VIOLATION OF**
27  **THE ADEA**
28

1  45. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

3  46. At all relevant times, Ms. Smith was over the age of 40.

4  47. Ms. Smith has a cause of action against Safeway under 29 U.S.C. § 621 *et seq.*

6  48. Safeway subjected Ms. Smith to severe and/or pervasive age-based harassment including but not limited to offensive age-based comments, disparate and less favorable treatment than younger employees, demeaning and false statements about her work performance.

10  49. Safeway discriminated against Ms. Smith, because of her age, by coercing her into a demotion, issuing two written warnings including false statements, suspending Ms. Smith, and then terminating her employment, all in violation of the ADEA.

13  50. The stated reasons for Safeway's conduct are not the true reasons, but instead were a pretext to hide Safeway's discriminatory conduct.

15  51. Safeway's actions were deliberate, willful and taken with malice or in reckless disregard of Ms. Smith's federally protected rights.

17  52. Safeway's actions were willful within the meaning of the ADEA, entitling Ms. Smith to liquidated damages.

19  53. As a direct result of Safeway's conduct, Ms. Smith has suffered, and will continue to suffer, lost income, lost benefits, and diminished earning capacity.

## COUNT II – RETALIATION IN VIOLATION OF THE ADEA

22  54. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

24  55. Safeway subjected Ms. Smith to retaliation because she engaged in protected activity by reporting age discrimination and by opposing conduct she believed to be unlawful.

27  56. Because Ms. Smith engaged in protected activity and reported discrimination and opposed conduct which she believed to be unlawful, Safeway subjected

her to retaliatory adverse employment action and severe or pervasive retaliatory harassment, including but not limited to forcing her to take a demotion, issuing two written warnings including false statements about her behavior, and disparate and less favorable treatment, suspension, and then termination of her employment.

57. The stated reasons for Safeway's conduct are not the true reasons, but instead were a pretext to hide Safeway's retaliatory conduct.

58. Safeway's actions were deliberate, willful and taken in reckless disregard of Ms. Smith's federally protected rights.

59. Safeway's actions were willful within the meaning of the ADEA, entitling Ms. Smith to liquidated damages.

60. As a direct result of Safeway's conduct, Ms. Smith has suffered, and will continue to suffer, lost income, lost benefits, and diminished earning capacity.

### COUNT III-- SEX DISCRIMINATION IN VIOLATION OF TITLE VII

61. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

62. Ms. Smith has a cause of action against Safeway under 42 U.S.C. § 2000e *et seq.*

63. Safeway discriminated against Ms. Smith because of her sex, by coercing her into a demotion, issuing two written warnings including false statements, suspending Ms. Smith, and then terminating her employment, all in violation of Title VII.

64. The stated reasons for Safeway's conduct are not the true reasons, but instead were a pretext to hide Safeway's discriminatory conduct.

65. Safeway's actions were deliberate, willful and taken with malice or in reckless disregard of Ms. Smith's federally protected rights.

66. As a result of Safeway's discriminatory conduct, Ms. Smith has suffered damages, including without limitation, loss of wages and associated benefits, emotional distress, mental anguish, and loss of enjoyment of life.

## COUNT IV – RETALIATION IN VIOLATION OF TITLE VII

67. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint as though fully incorporated in this section.

68. Safeway subjected Ms. Smith to retaliation because she engaged in protected activity by reporting sex discrimination and by opposing conduct she believed to be unlawful.

69. Because Ms. Smith engaged in protected activity and reported discrimination and opposed conduct which she believed to be unlawful, Safeway subjected her to retaliatory adverse employment action and severe or pervasive retaliatory harassment, including but not limited to forcing her to take a demotion, issuing two written warnings including false statements about her behavior, treating her in a disparate and less favorable manner, suspending her, and then terminating her employment.

70. The stated reasons for Safeway's conduct are not the true reasons, but instead were a pretext to hide Safeway's retaliatory conduct.

71. Safeway's actions were deliberate, willful and taken in reckless disregard of Ms. Smith's federally protected rights.

72. As a result of Safeway's discriminatory conduct, Ms. Smith has suffered damages, including without limitation, loss of wages and associated benefits, emotional distress, mental anguish, and loss of enjoyment of life.

## REQUEST FOR JURY

Ms. Smith requests that the Court set this case for a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Antoinette Smith prays that the Court enter judgment in her favor and against Defendant Safeway as follows:

1.. For an award of economic damages, including back pay with prejudgment interest, in an amount sufficient to make Plaintiff whole, for past and future lost income

and benefits and other economic losses suffered by Plaintiff resulting from Defendant's conduct;

2. For an award of front pay or reinstatement;

3. For an award of liquidated damages for willfulness within the meaning of the ADEA;

4. For compensatory damages in a just and reasonable amount;

5. For punitive damages in a just and reasonable amount;

6. For plaintiff's costs and attorney's fees in this matter pursuant to 42 U.S.C. § 2000e-5(k) and 29 U.S.C. § 216(b);

7. For such other relief as the Court deems just and proper.

DATED this 10th day of October, 2018.

                                            TURCHIK LAW FIRM, P.C.

                                            By: s/Merle Joy Turchik
                                                Merle Joy Turchik
                                                2205 E. Speedway Blvd.
                                                Tucson, AZ 8719
                                                (520) 882-7070

                                            *Attorneys for Plaintiff*

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on October 10, 2018, I electronically transmitted the attached |
| 3 | document to the Clerk's Office using the CM-ECF System for filing. |
| 4 | |
| 5 | s/Merle Joy Turchik |